"This case is before us for review under Wunderlich Act standards, 41 U.S.C. §§ 321, 322, of a decision of the General Services Administration Board of Contract Appeals, GSBCA 3859, 76-1 BCA ¶11,679, rejecting the claim entirely. Senior Trial Judge White has furnished a recommended decision and conclusion of law under Rule 166(c) and plaintiff requests our review thereof. Upon further briefing and oral argument, we have concluded not to adopt the recommended decision as our own, helpful though it is, and instead to remand the case to the GSBCA for further proceedings.
"Plaintiff and defendant entered into Contract No. GS-00C-00059 on April 18, 1973. Plaintiff was to supply, for each of two field offices of the Social Security Administration, a data processing system to perform certain stated tasks. It was not obtainable off the shelf, but plaintiff, like other proposers, was required to demonstrate its system then available, which was done January 3, 1973. Thereafter the award was made on the basis of the modifications deemed necessary. A report of a Technical and Evaluation Committee, dated March 9, 1973, indicated what they were. The report was discussed at the time of award and plaintiff received a copy soon after. It is called in the case 'document No. 1.’ Plaintiff was required to demonstrate the initial increment to be delivered, not later than June 4, 1973, to show that the equipment could do the work. On May 29, 1973, plaintiff requested an extension of the June 4 demonstration date, alleging that amplification and modification of contract requirements had caused its completion schedule to slip. The contracting officer denied extension immediately. The demonstration therefore took place June 4 as scheduled, and it is conceded the equipment failed. Defendant thereupon, June 11, 1973, terminated the contract for default.
"The issue tried before the Board was whether various communications by defendant to plaintiff between award *486 and default constituted valid interpretations of the contract requirements, or constructive change orders. The Board took the position that in all instances but two the communications did not vary the original contract, and that the plaintiff knew, or should have known, all along that it was required to do what these communications demanded. The Board acknowledged that the color change demanded was a change, but said it was agreed to, and in any case the contract was terminated before plaintiff implemented it. It also acknowledged that a five day update in delivery of the first increment was a change, but lacked significance for similar reasons.
"The Board held the termination for default was proper and not premature because plaintiff requested an inordinate time extension (to August 15, 1973) and had demonstrated on June 4 that it was not going to be able to perform.
"The existence of a causal connection between the alleged changes other than the two above-mentioned, and the failure at the June 4 demonstration, was mooted by the Board’s holding and seems never to have been addressed as an issue. A witness for plaintiff asserted there was such a connection, but there were no specifics. To our minds, it stands to reason that the performance of what amounted to developmental work, on the tight schedule contracted for here, would naturally be disrupted by significant changes, and a conclusion that it was not would be surprising. In our view, a holding that there were additional changes would practically mandate inquiry as to causal effect. If an instruction by the Government, supposedly based on contract requirements, turns out to be a constructive change, the refusal to extend time turns into an acceleration order, another constructive change, unless it is shown no need for extension was thereby generated. Cf. order in Purvis v. United States, ante at 398.
"According to Trial Judge White, there was at least one major constructive change, the requirement respecting range checking and field validation, which he holds was not communicated until May 1973. He says at the time of award the plaintiff did not have sufficient information to know that its commercial product did not satisfy Government requirements in that regard. We agree and consider the Board’s comments under Discussion, para. 2, Range *487 Checking and Field Validation err as a matter of law in failing to give sufficient weight to the obligation of the Government, in its performance specifications, to make its performance requirements clear, and to the fact that ambiguous or vague Government specifications are subject to the interpretation reasonably given by the other party to the contract. We are unable to state, nor does the trial judge advise us, whether the somewhat cursory Board discussion of other change order issues is infected by similar error.
"The trial judge, following his analysis of the dispute respecting Range Checking and Field Validation, says he gives it 'for the purpose of giving some of the flavor of the case’ because if plaintiff had been left to its own devices as to all the change issues, with no performance required beyond the contract as to any of them, it still would have failed to perform satisfactorily about 22 mandatory contract requirements. He does not state how he knows this and we fail to see how it is a rational conclusion from the record. It is not found by the Board, in any case, and we are unable to conclude they would not have found to the contrary. The trial judge we think errs in noticing only the additional work the alleged change orders required, not that, together with the refusal to extend the time, they would very likely have a disruptive effect on other work, as is the nature of a constructive acceleration to do.
"The Board further erred as a matter of law in holding that the persons who ordered the alleged constructive changes lacked authority to do so. It fails to note such cases as Gresham & Co. v. United States, 200 Ct. Cl. 97, 470 F.2d 542 (1972), holding that contracting officers have a duty to know what their authorized representatives in direct contact with the contractor are saying or doing, and Max Drill, Inc. v. United States, 192 Ct. Cl. 608, 427 F.2d 1233 (1970), holding that contracting officers cannot disavow the persons they send to give guidance on the spot to the contractor. Here the contracting officer and the Board are not repudiating what the representatives said: they are upholding the guidance they gave as perfectly proper. The Board cannot simultaneously hold that what the representatives said was correct, and disavow it as unauthorized. Such defense of lack of authorization is valid only where *488 the representative says or does something he was not authorized to say or do, according to his superiors.
"It must and does follow, we do not agree that we should dismiss the petition at this time. We note that there is a counterclaim for reprocurement costs which, we agree with the trial judge, must be passed on by the Board in the first instance. It is somewhat suspect in that the Government seems to have started reprocurement before the default was effected. If the Board still holds the default termination was proper, its findings should cover that subject. There is likewise a breach count (Count II) to the petition. Decision whether the plaintiff has a breach claim can await the completion of the new findings we are directing, and the dismissal of the breach count at this time would be premature.
"Accordingly, the cause is remanded to the Board of Contract Appeals, General Services Administration, under 28 U.S.C. § 1491, as amended by Pub.L. 92-415, § 1, 86 Stat. 652, with directions to reconsider the case and make new findings necessary in view of the foregoing legal conclusions of the court. Further court proceedings relating to the claim and counterclaim in all their aspects are stayed pending a new determination by said tribunal, for a period not to exceed six months. The attorney of record for plaintiff is designated to advise the court, by letter to the trial judge (with a copy to opposing counsel) of the status of the proceedings on remand, such advice to be given at intervals of 90 days or less, beginning with the date of this order.”